Ladies and gentlemen, please rise. This court is now in session. Please be seated. Thank you. Will the clerk please call the next case. 321-0525, M.I.C. General Insurance Company, Appellant-slash-Cross Appellee by Esther Schwartz v. Penny Hendel and Brent Hendel, Appendix-slash-Cross Appellants by Frances Layton Ms. Schwartz, you may proceed. Good morning, and may it please the Court. My name is Esther Joy Schwartz. I'm from the law firm Schwartz Gilligan, and I represent M.I.C. Insurance Corporation. And even though I'm sitting at the table that says I'm an appellant, I'm actually an appellant and an appellee, and we're dealing with cross appeals. If the Court has already read all the briefs, then the Court understands the issues before it, and there's basically two claims that we're arguing today. One claim is Brad Hexdall's, which is the bodily injury claim. That's the claim we prevailed on in the lower court. The judge ruled that our own daughter exclusion applied and barred his claim. The second claim is the loss of consortium claim of his wife, Penny Hexdall. That is the claim that we did not prevail on in the lower court. Excuse me just a moment. What's causing that feedback? We didn't have it? Yeah, maybe adjust the mic. Let's try it again. Penny Hexdall has a loss of consortium claim, and the Court ruled that her claim would be covered and was not barred under our own daughter exclusion. So the appeals were filed by both sides to ask the Court to affirm and or reverse. I'm going to use my first 15 minutes really to argue the Penny part of the case. We had already prevailed on the Brad part. I think it's already fully briefed, and the Court has always reviewed all materials. I think that's a pretty basic appeal argument that we've cited case law to the Court, and we've explained the change in 1995, and I will use those arguments in my rebuttal. But I wanted to argue the Penny side of the case because I believe the lower court was incorrect in that decision, and I know that that is your latest jurist to the Third District, and it's difficult to argue that your judge was wrong in the lower court. But I think that that was also because of the way it was argued in the lower court. If I could just explain briefly, when the case came before the Court, the major part of the case really was the Brad injury. I didn't quite understand because the judge is in the Third District. Your judge is now Judge Patterson, or Peterson is now in the Third District. Peterson, oh, he's on the panel. Right, and it's difficult to tell you and your latest judge is wrong about a decision. He's not on the panel. I understand, but he's still your brethren and your colleague, and I want to be sensitive to his appointment. I just want to explain that. Well, it really has no impact. Okay, great. Well, I don't think that we gave the judge enough information in the lower court for him to have ruled in our favor, and I want to explain exactly what happened there because the Penny part of the case was sort of a throw-in argument, in my opinion, and we had always believed that when you don't have an injury case, you don't have a consortium case. And when that came up in oral argument, the Court asked us both sides to send some supplemental case law to him so he could review it, and at the time, there was no case law in Illinois on a coverage context involving this issue. It is a case of first impression. There was a lower district court decision that did discuss this that ruled in favor of when the BI case is barred, the consortium is. I'm not telling this Court that it has to file a federal district court, and we also cited some Washington, D.C., Washington State case law that supported us, but there was no Illinois case law on this. And so we filed a letter to the judge and cited all this case law that was just more of the common-sense approach. I mean, how can there be a consortium case if there's no bodily injury case? And I think that we were all arguing this using the exclusion because that's what the judge had said. You don't fit within the exclusion. Since Penny was not an occupant of the vehicle, you can't use your exclusion against her factually, and in that respect, he was correct. And so we were not able to find anything to show him other than case law and analogy why there shouldn't be consortium when there is no bodily injury. And so we cited the contributory negligence statute, which bars the claim of a spouse even though there is no mention of the spouse in the statute. It just says the plaintiff who's at fault, and that would have been Brad. So we already have some argument that we have a statute, and we've always agreed that if there's contributory negligence on the part of Brad, it would then trickle down to Penny, a spouse, and a spouse would bar a claim. So we argued that by analogy. We argued the Workers' Comp Act, which says that you can't sue if you're an employee. And we argued by analogy, well, an employee can't sue, so how can his wife sue? She's not an employee. So all of our arguments, which we raised and we raised in our opening brief, were to try to show the court that Illinois has always put them together and said one doesn't survive if the other doesn't survive. And I think that's where the struggle was, because we were trying to fit this within the exclusion. And then we had our epiphany during our reply brief, which is a similar epiphany that counsel had, because when he looked at the exclusion, he even argued that we don't even get within the exclusion because the opening language requires bodily injury. And so since Penny had no bodily injury, we never made it to the exclusion. So then we went back and said, you know, it's the insuring agreement. This is really a simple answer. The insuring agreement, she doesn't fit in because she has to be an insured who can recover because of bodily injury. And she will never recover because of bodily injury. So the answer was right there. I mean, we have all the law in our favor. We have all the analogous case law in our favor. But we don't have the language. And if you're looking for the end game where you have to find language, it's right there in the insuring agreement. She can't recover because Brad can't recover. She never makes it through the front door. She never makes it into the insuring agreement. And I think that's really the answer to this part of the appeal. And I also think we have to be reminding of burdens of proof. We don't have to raise the exclusion. They have to prove the condition precedent that they come within the insuring agreement. They've got the burden of proof. And I don't believe they can come within the burden of proof. And we have to remember that this is a first-party case. I know counsel's going to make all these arguments about they can file suit against Mr. Baggett, the state farm insured, and he's not legally liable until we go to trial, and we don't know if there's contributory negligence until we go to trial. This is a first-party case. This is a UIM case that will either go to arbitration, which is actually what was demanded here, or a civil suit. The defendant in that case is the insurance company. It's a contract case. It's never going to – we're not standing in the shoes of Mr. Baggett. Allstate v. Elkins is very clear in the Ohio Supreme Court that in a UIM or a U.M. case, the insurance company doesn't stand in the shoes. So Brad can't recover not because he can't recover against Baggett. State farm pitched their limits. So we're never going to know liability in state farm's mind, but it was looking at it from a liability perspective, and we're asking if you look at it from a coverage perspective, from a contract perspective. And if Brad can't recover, then Patty can't recover. I mean, that's the logical reading. So let's talk about Brown v. Metzger because that's the only case that's been cited against us, first by opposing counsel and then by the court in their memorandum order, which is the famous Supreme Court case. There's an appellate case and a Supreme Court case that changed the law about joinder. You have to file the consortium while the underlying case is pending. I have never argued that they're not independent causes of action. They're independent because they're brought in the name of the spouse. In some states, they're actually brought by the spouse for the wife, but they can be brought independently. But then they're derivative. And what happened in Brown v. Metzger was you had a not-so-happy husband and wife who were going through a dissolution of marriage, who each hired their own attorney, and you had one suit for BI and a completely second suit for the consortium. And then you had a dissolution case where there was a court order about not settling because certain percentages were allowed in that proceeding. And when they settled the husband's case for less than limits, I don't know, I'm a defense attorney and I don't think I would have brought the motion, but they took the release and they used it in the Petty case and said, you have to dismiss her case. And that's when the court said, wait a minute, he can't waive her independent claim. That was a voluntary waiver. And when we talk about being barred, we're talking about voluntary versus involuntary. Brad involuntarily is barred. Brad wants coverage, and we're barring it by the creation of our contract. And so Penny has to go along with him. Her damages are consequential to his. She has no damages if he has no damages. We're not saying that she could not file her own suit, which is what happens in some of these cases. I think the Schrock case that they cite was a case where the husband never filed, so the wife filed. And then she non-suited and filed again. And the argument was, how can she file when the husband could never still file? And the court said, well, he never preserved his case, but she can. That's completely different. But in this case, and you have to think about it this way, the statute of limitations is two years. In a contract action, unless you have certain clauses, it's ten years. So what happens if they can never recover against Bagot because they never filed suit? That doesn't mean that they can't recover against us, because I don't use that barring against them. I'm using the contract language to bar Brad and then say indirectly it has to bar Penny. And that's the only, in our opinion, logical interpretation of how the law is in Illinois. And we've cited, as I say, numerous cases by analogy where you have contract language that didn't have specificity but still it barred, and then we have statutes that didn't have specificity but it still barred. And then you have to remember, the per-person limit is for both. Courts have always viewed them together as one person. And so if that one person has no recovery, to me, in my opinion, if you poll five attorneys and ask them the same question, if you don't have a BI case, can you have a consortium case, I think everyone would be the way we thought when we first started this journey. It's automatic. But if we need to find you the law or the cases to make this decision as a matter of first impression, then you don't have to look any further than the insuring agreement, because in that she can't be an insured who can recover because of the bodily injury. And counsel will go through the analysis how bodily injury does not include consortium, and we agree, because if it did, didn't, she wouldn't have any coverage. But the way that the policies work is it's because of bodily injury. So Patty gets coverage because of bodily injury, and here there is no because of bodily injury. So all roads lead back to the argument of whether or not our exclusion applies to Brad. And as I said, I'm not going to argue that now because I've already argued it in my brief, and I'll use that for rebuttal. But I respectfully ask this Court to reverse the judgment on the pleadings that was entered in favor of Penny and find in favor of MIC Insurance Corporation that she has no underinsured motorist claim. Thank you for your time. Questions? No questions. Oh, I'm sorry. No questions? Yeah. Counsel? Lehani? Lehani. Lehani, excuse me. It's all right. My high school math teacher was looking for a Hawaiian one year, you know, and he thought Lehani might be the best pronunciation. It's not very Hawaiian. It doesn't, does it? It does. A little pineapple thing, but no. My name is Jack Lehani. I told your clerk that my ancestors apparently couldn't spell, but we've come to accept it, and we're all right here. With me in court this morning, trial counsel Mr. Black. My co-counsel, Ms. Dowd, had surgery yesterday, and she could not be here, but she sends her regrets. So I'd like to try and bring this case back to what it's about a little bit, and not about what we just heard. We don't go to the appellate court and say we didn't give enough information to the trial court. We're here on a record, and the record is what we have to work with, and that's our boundaries for our exercise this morning, and always in an appellate case. So I'm not sure what we gain by saying we didn't give enough information to the trial court with regard to Penny. One thing I want to point out as far as what counsel said, she did say, how can there be a consortium case if there's no bodily injury? She is correct. You can't have a consortium case without a bodily injury. However, there is a bodily injury case. Brad has a bodily injury case against the driver of the truck that hit him. So that's an easy one. We don't have to worry about whether a consortium is derivative or is an independent standalone cause of action or what somebody in Montana or Mongolia decided. We don't care about any of that. That's not our case. This is an insurance coverage case, and we are bounded by what the insurance policy says as to Penny. With Brad, we get into matters of statutory construction. Counsel started with Penny, and I'll start with Penny as well if I may. Counsel raised in the pleadings and in her brief in this court the applicability of a particular exclusion, an owned vehicle exclusion, and the owned vehicle exclusion, we'll talk about that in further detail with regard to Brad, but let's just start out with what raising an exclusion means. Raising an exclusion in an insurance coverage case means we agree there is coverage here, but for something. It's where you dig your ditch. It's where you set up your defense. Your defense is, yeah, there's coverage here, but the exclusion applies to the defendant, and that's what this case is about. Now, at pages 8 to 11, beginning of page 12, in my brief, my opening brief, I do address, because this is de novo review, and the court will have to satisfy itself that there's coverage here, I did walk through the steps to show how we come within the insuring agreement of the policy, both Brad and Penny, and how there is coverage. And when my father was an attorney, he used to talk about the big stack of paper. He says the good attorney knows in a big stack of paper which piece of paper is important, and the great attorney knows what particular piece of paper it is. In this case, we have an exclusion. We have the underinsured and uninsured motorist bodily insurance coverage endorsement, which supersedes the UMUIM coverage in the body of the policy, and this is pages 72 through 76 of the record. Anyway, there are separate insuring agreements for UM coverage, underinsured motorist coverage, and UIM coverage, which is what we're here about, underinsured motorist coverage. And what it says, and I know we don't like to read cases that have things to the court, but I'm going to have to read a little bit because when we're talking insurance coverage, we really should talk about the policy language a little bit. Subject to the limit of liability, if underinsured motorist bodily injury coverage is shown on the declarations page, we will pay compensatory damages for which an insured is legally entitled to recover from the owner or operator of the underinsured motor vehicle because of bodily injury. And insured, so Brad or Penny, legally entitled to recover from the owner or operator of the underinsured motor vehicle, that's Bagot, the driver of the truck, because of bodily injury. Bodily injury meaning Brad was seriously injured in this accident. And because of covers consortium, whether it's derivative, standalone, personal injury claim, a bodily injury claim. We address all this in the brief. It doesn't matter all this stuff about workers' compensation and things. That has nothing to do with our case. The case is she is a, she's covered because her claim arises because of Brad's bodily injury. It doesn't say bodily injury to the insured. It says an insured, Brad or Penny. And then it says, you know, there's three things you have to do in order to meet this coverage, come within the front door, as counsel said, because of bodily injury sustained by and insured by Brad caused by an accident, Bagot's truck, and arising out of the ownership, maintenance, or use of an underinsured motorist vehicle or motor vehicle. The pickup truck was underinsured. So it meets the definition. So we meet all those definitions and we come within the insuring agreement of policy, game, set, match. We don't have to go any further than that. The trial court found additionally, and this was their specific basis, the trial court's specific basis, that because Penny was not occupying the motor vehicle, the motorcycle at the time of the collision, exclusion number 10, which is, for the record, at pages 73 and 74. It's over at the top of the page. But the bottom line is she wasn't occupying the motorcycle, therefore, exclusion 10, which says we do not provide coverage under this Part C for bodily injury sustained by any insured who is insured while occupying or when struck by. And they say, well, wait a minute, she's not occupying, so this exclusion doesn't even apply. So the trial court had that basis specifically. The other basis, I also argued in the brief, and that's at page 12. So, again, insurance coverage, it's much better to actually look at the actual words in the cases and the actual language of the policy. And I think I was, I hope I'm better behind the keyboard than I am standing at a podium when I'm talking about those things because they get into the little specific details. But I think that's the answer to that. Exclusion number 10 applies only, and if at all, to insured occupying a motor vehicle and not any insured for this coverage. So it applies to Brad if it applies to anybody at all. Now, the question is going to be, okay, what if Brad is not covered as the trial court held? He's not covered because this exclusion 10 applies to him. Does that defeat in any way Penny's claim? No, because the exclusion A, by its terms, doesn't apply to Penny, and B, because Penny has a separate claim because of Brad's bodily injury. So it's a matter of coming within the coverage for the policy. And, again, we're relying on the language of the policy. These policies are drafted by insurance companies for the benefit of insurance companies subject to state regulation and public policy considerations and judicial construction. But the bottom line is that unless it's in the policy, the insurance company can't rely on it, and it's not here. All this business about workers' compensation and whether it's derivative or this or that, it's not here. What's here is she has a claim because of Brad's injury by Bagot. It doesn't matter what the procedural aspect of it is for resolving a UIM claim. The reason the claim exists is because Bagot hit Brad. That's the reason that the claim exists. So how it's resolved, the fact that the insurance company does not stand in Bagot's shoes, that's all irrelevant to this. It has nothing to do with anything. The reason she has a claim is because of Brad's bodily injury. That's what the policy says. Mr. Bohane, that argument seems to me, and maybe you can clarify it for me, that because of his claim makes it seem as though her claim is derivative of his. She wouldn't have a claim except for his claim. Right, but what claim? His claim under the policy? No, no, no. His claim against Bagot, that's the claim. Yes, his claim under the policy. That's what we're talking about. Right, but that's not what the policy says. The policy says because of his bodily injury. Because of his bodily injury. Which makes it somewhat dependent on his claim because the bodily injury here is his, right? No. See, I think what you have to keep separate here is the fact that the insurance company may have a defense to coverage, but it doesn't create any defense to Brad's claim against Bagot because there may not be coverage, and it doesn't create any defense to Penny's claim against Bagot because of some language in the policy. It doesn't create any defense at all there. And her claim, the thing that gets her in the front door, because of bodily injury, not because of contractual coverage. It doesn't say because Brad is covered. It says because Brad has been injured, and that's the reason why she's covered. So that's the explanation, I hope, and that's the answer to your question. Okay. All right. Now, counsel did not raise. So in other words, somewhat because of the fact he had bodily injury, not because he may have been indemnified by his company in some way. Right. The pocket that will or the pot that's available to compensate him is not relevant to the existence of the claim. It may be relevant to the satisfaction of the claim, but that's not what we're here about. We're here about whether or not this pot should be available for satisfaction of the claim. We're not satisfying the claim now. We're not resolving the claim now, if I've answered that correctly. Well, in effect, you're saying that the outside of the policy fact that he was injured creates a separate claim for her. Yes. Yes, it does. And then the question is whether under UIN, that claim could be indemnified by, what is it, Progressive? Well, Progressive is not a party to this either. No, no. By MIC, whether or not there's any recovery. Or MIC. MIC. Yeah. No, Progressive has been mentioned in there, but let's leave them out. I'm talking about. MIC. Right. Yes. Yes. And that's just a matter of contract. That's not a matter of whether or not she has a claim. And the contract language says she has a claim. It doesn't defeat her claim. Now, I haven't mentioned Brad yet at all, and I see my yellow light has gone on. Keep going. So let me go quickly into Brad for just a second because it does involve a question of statutory construction as well as contract construction. But the bottom line here is in 1995, the legislature changed the law with regard to UM coverage. They amended Section 143A of the Insurance Code to permit a owned vehicle exclusion that had been specifically outlawed by the Supreme Court in the 1977 Swire case, which is cited in the materials. So we're not trying to overturn a public policy in our case here. Swire set the public policy. The only question is whether or not the legislature, in its infinite wisdom, did or did not change the underinsured motorist statute. At the same time, it changed the uninsured motorist statute. And the best argument I can make on this is that we have the statute. We have the public act. And the public act shows that they amended only the UM statute and not the UIM statute. There's a contention in the case that there's no such separate statute. And I say that would come as a surprise to most of us who have been practicing in this area because we've seen these separate statutes for many, many years. And, of course, their policy itself has separate coverages for uninsured and underinsured coverage. Of course they're separate. We're not making an argument that was apparently made by the insurance, the insured in Goldstein, saying that somehow the purposes of the statutes are different. We're not arguing the purposes of the statute at all. We understand the language of the cases, trying to harmonize the statutes. We're not getting into that at all. What we are saying is we are only asking the court to examine what the respective statutes say and what they did not say. There are separate coverages in the policy. There are separate statutes in the statute books. And if the Supreme Court in Squire invalidated the exclusion and it has not been amended by the legislature, and it has not, then it still is good public policy and it is a bad contract exclusion. And it cannot be enforced. And with that, now that I have a red light, I will subside and reserve my time. I think we'll be talking about Brad on rebuttal. We have five minutes on rebuttal. Thank you, Your Honor. Thank you. Counsel can have an opportunity for reply. I would just remind the court that if the record has any ground for some rejection for or against, this court can consider it. We put the policy before the court. We never conceded the insuring agreement. And counsel filed a counterclaim trying to get into the insuring agreement, and that's been their entire argument. So for this court to say you can't make that decision, there's some kind of forfeiture. We respectfully disagree. As far as the Brad part of the case, Your Honor, I've been practicing over 30 years, and I've always called 143A to the underinsured motor statute. It was only this case that forced me to review it and realize it doesn't say that. It says it's an additional uninsured motor statute. And then when you look at the seven provisions, 4, 5, 6, and 7 are UIM. 1, 2, and 3 are UM. So as we've been practicing long enough to know how UIM came into existence, it evolved from the UM statute. So uninsured motors coverage came first, and then underinsured motors coverage came next. And then there were all the arguments about how do you offer and things of that nature, but it's all under additional uninsured motors coverage. So if you read all the cases we've given this court, all the Supreme Court decisions, and Goldstein is very well-reasoned, that the public policy behind UM and UIM is the same. It seems very incongruous that if somebody gets hit by an uninsured motorist, they don't have the coverage. But if they're fortuitous enough to be hit by an underinsured motorist, they do. And I think that all the decisions have discussed the fact that it's the same public policy, and that when you have it under the UM 143A, you have Hettenhausen. Hettenhausen was a UIM case. Hettenhausen was decided on 143A. So how can you then say 143A2 is separate? Because all the decisions have said it's all under 143A. So we're not going to have UM prior to 1995, and we're not going to have UIM prior to 1995. But then when the change came in, there was nowhere to change that wording in 143A2. The only place that mandated was 143A. And it said it's not that it agreed to allow the exclusion. It comes right out and says you shall not have UM coverage for this when you're in a vehicle that you either owned or furnished for your regular use if you have other insurance. So we've got the first layer of State Farm covering the Hecksdales. We've got the progressive layer covering the Hecksdales. And then we've got ours. And because they have other insurance, and because Brad factually was occupying the motorcycle owned by him, he doesn't have UM or UIM coverage. And it's the same public policy, and I don't feel I could argue this any better than Judge Hall wrote in the Goldstein decision. And I know counsel keeps telling you this is stare decisis, and you're free to do whatever you want. It's an independent court. But all of the answers to all the arguments that are raised here are the same, including, and this is important, there was never an argument raised in Goldstein about the public policy behind UM and UIM being the same, and no cases were even cited to it. But on its own, Goldstein went through Vakalina and Sulcer and all the decisions, Schultz, and said even though there's a forfeiture, this is an important decision, and this is what we're saying, which is UM and UIM for this purpose are the same. They're the equivalent of one another. They're inextricably linked. And what we've asked this court, which is very important, counsel agrees that our exclusion applies. Factually, it's clear on its face. It's not ambiguous. You can't strike it down because it should be interpreted a different way. So now we've got a clear private contract, and the only way you could argue we can't rely on it if we defy public policy, and we would ask the court to consider the cases that we've argued that say now the burden shifts. Now it's counsel who has to argue why should we take something that's so clear and void it based on a public policy which should be sparingly used when the public policy of UM and UIM have been inextricably linked prior to 1995 to bar them both, and now you're going to let one go and one not. So in all due respect, we would ask the court to affirm the win for Brad, and alternatively, not alternatively, but in addition, because Brad has no bodily injury, and I think we've argued this ad nauseum in our brief about whether you can file against Bagot is not the issue. Brad has no recovery, and it's only logical that Penny doesn't. We're not saying she doesn't have an independent cause of action, but here her cause of action is dependent on Brad's bodily injury, which has been barred. So we would ask the court to reverse and find in favor of MIC Insurance Corporation that there is no coverage for Penny, and I would just ask the court for purposes of its decision, there's been some confusion of the name of our insurance company. No. Okay. It's Corporation. Okay. I just want to make sure that when you write it, we have the right one listed. I think we'll take care of it. Thank you so much for your time. It's been a pleasure. Okay. Thank you. Do you have your file? Thank you. Okay. Mr. O'Hanlon. Goldstein does address the public policy issue, and apparently, and again, I'm not going to dispute counsel's reading of it, but the way I read it, the insured apparently claimed that the purpose of the UIM statute differs from that of the UIM statute, and the application of the amendment to 143A defeated the purpose of the UIM coverage. We don't care about that. We're only interested in what the language of the statute was and is, and, you know, when the Supreme Court in Squire invalidated the non-vehicle exclusion, it judicially construed that statute to include a public policy against an owned vehicle exclusion. That's what, you know, judicial construction is, and we've raised this in our closing brief, okay? We are not trying to overturn an established public policy. We are asking this Court to respect and enforce the existing public policy, which the Goldstein Court failed to do. We are not saying that the owned vehicle exclusion violates public policy except because the Supreme Court set it for us. We don't have to say that. We don't have to prove it. We don't have to undertake a burden because it's already established in 1977. The public policy declared by the Supreme Court has not changed because the statute hasn't changed. The statutes are different. They are separate. They're separately in the statute books. They are different lengths. They are different. They cover different subjects. The policy is different. The policy addresses UM coverage differently from UIM coverage. If you look at our separate insuring agreements there, of course they are treated separately. Do they have a common purpose? Do they have similar goals? Yes. Nobody is arguing any of that. The issue is only what does the policy say as to Penny and what does the policy say and what does the statute say as to Brad. If the exclusion is invalid as a matter of public policy as established by the Supreme Court in the Squire case, then there exists coverage under this policy. If the exclusion does not, if it does apply because this court follows Goldstein for whatever reason, that's I think wrong. But regardless of that, if the court follows Goldstein, that does not invalidate Penny's claim under the policy for all the reasons we've said. I believe our briefs have stated these issues clearly. I believe we've tried to distinguish the matters that are relevant to this case from those which are not, and we've heard a number of matters that were not relevant to this case or to the issues that are raised by this case today. But if we look at only those things that are relevant under the policy and under the statutes, I believe this court will be able to both affirm the judgment as to Penny and reverse the judgment as to Brad with instructions appropriate to the reversal. With that, unless there's any questions. No, I think, hopefully I said it better in the brief anyway. Thank you much. Thank you, counsel. Thank you, counsel, both for your arguments in this matter this morning. It will take under advisement a written disposition.